UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

SPINAL TECHNOLOGIES, LLC,

                                    Plaintiff,

            v.                                          **DECISION AND ORDER**
                                                              21-CV-883S

MAZOR ROBOTICS INC.,
MAZOR ROBOTICS LTD.,

                                    Defendants.

## I.      Introduction

In this removed diversity products liability action, Plaintiff alleges that Defendants breached their contract, breached warranties, and were unjustly enriched from defects in their device, the Mazor X.  Plaintiff seeks damages, indemnification, and declaratory relief.  (Docket No. 1, Ex. A, Compl.; Docket No. 1, Notice of Removal ¶ 1.)

Plaintiff Spinal Technologies is a Texas limited liability company (Docket No. 1, Ex. A, Compl. ¶ 2; Docket No. 1, Notice of Removal ¶ 8).  Spinal Technologies is a managing entity of a medical practice, Spine Associates, engaged in the practice orthopedic spinal surgery (Docket No. 1, Ex. A, Compl. ¶ 3).

Defendant Mazor Robotics Inc. ("Mazor") is a Delaware corporation with its principal place of business is Minnesota and Defendant Mazor Robotics Ltd. ("MRL") is an Israeli corporation with its principal place of business in Israel (Docket No. 1, Notice of Removal ¶¶ 9, 10; Docket No. 1, Ex. A, Compl. ¶¶ 4, 5).  Mazor develops, manufactures, and sells surgical guidance systems for spinal and brain surgery (Docket No. 1, Ex. A, Compl. ¶ 6).

Before this Court is Defendants' Motion to Dismiss (Docket No. 5).  For the reasons stated below, this Motion is granted and this case is dismissed.

## II.    Background

### A.  Facts as Alleged in the Complaint

Plaintiff alleges that it used Mazor's surgical guidance equipment and software, Mazor's Robotics Renaissance, since 2011 (Docket No. 1, Ex. A, Compl. ¶ 9).  Mazor's Renaissance device is a very small robot that is placed over the patient.  Using computer software with computed tomography (CT) and x-ray scans, the surgeon can see the patient's spine and use the robot to align a drill to accurately place pedicle screws during spinal surgery.  (Id. ¶ 10.)

In 2016, Chris Sells, a Mazor executive, introduced Plaintiff to Mazor's new surgical guidance system, the Mazor X (id. ¶ 11).  Sells represented to Plaintiff that Mazor X was more accurate and would diminish risk and provide better protection than the Renaissance, allowing real time navigation during procedures (id. ¶¶ 12, 13).  Based on representations by Defendant and demonstration of the device, Plaintiff expressed interest in purchasing the Mazor X (id. ¶ 15; see id. ¶ 14).  The Mazor X, however, would not be available until 2017, so Defendant offered to sell to Plaintiff a new Renaissance device that could be exchanged for a Mazor X once the new device became available (id. ¶¶ 16, 18).

On December 6, 2016, Plaintiff entered into a sales agreement with Defendant to purchase a Renaissance device with the understanding that it could be traded-in for an available Mazor X (id. ¶ 19, Ex. A, Trade-In Program Agreement ("Sales Agreement")).  This Sales Agreement contained a warranty that the Renaissance was free of defects in

materials and workmanship (id. ¶ 24, Ex. A, Sales Agreement § 6.1.2 (the "Disclaimer")). This warranty and the terms of the Sales Agreement also applied to a traded Mazor X (id. ¶ 25; see Docket No. 5, Defs. Memo. at 9 n.2).

Plaintiff then entered into a Master Lease Agreement with De Lage Landen Financial Services ("DLL") for lease of the new Renaissance (Docket No. 1, Ex. A, Compl. ¶¶ 22, 23, Ex. B, DLL Master Lease).  Plaintiff contends that it would not have agreed to this Master Lease (or the sales agreement) but for the representations about the speed and safety of the Mazor X (id. ¶ 45).

Defendants deny liability because Plaintiff never directly purchased the Mazor X from them due to the Master Lease Agreement.  Further, Defendants assert that they were not parties to the Master Lease.  (Docket No. 5, Defs. Memo. at 7 n.1.)

Defendant delivered and installed the new Renaissance machine at the end of 2016 and then replaced it with the Mazor X device on or about January 9, 2017 (Docket No. 1, Ex. A, Compl. ¶¶ 26, 27).  Plaintiff complains that the Mazor X failed to function as warranted, consistently malfunctioning from the first day of installation (id. ¶¶ 29, 30). This caused a "enormous" problem because a surgeon cannot see the nerves or the spinal cord and the Mazor X was designed to aid the surgeon in ensuring that pedicle screws are accurately placed in specific spots (id. ¶¶ 31, 32).  Defendant's representatives were present during surgeries using Mazor X and each time the device malfunctioned, Defendant internally noted the service call (id. ¶¶ 33-37, Ex. C).  Plaintiff argues either that it never accepted the Mazor X due to its performance issues (id. ¶ 38) or that (if it deemed to have accepted the device) that this acceptance was revoked (id. ¶ 67).  The Food and Drug Administration later issued a recall for the Mazor X related to

the device design but Defendants failed to notify Plaintiff of the recall (id. ¶¶ 39, 40). Plaintiff, instead, had to continue using its older (at least five-year-old) Renaissance machine (id. ¶ 42).

Despite the continued malfunction of the Mazor X, Plaintiff made lease payments to DLL, paying a total of $426,232.67 toward the purchase of Mazor X (id. ¶ 41).  But on April 2019, Plaintiff ceased making lease payments on the Mazor X (id. ¶ 43).  On or about August 2019, DLL sued Plaintiff for the unpaid lease (id. ¶ 44).

Plaintiff alleges in the First Cause of Action breach of the express warranty that the machines would be free from defects (id. ¶¶ 47-51).  The Second Cause of Action alleges breach of implied warranty (id. ¶¶ 53-58).  The Third Cause of Action alleges breach of contract (id. ¶¶ 60-69).  Alternatively, the Fourth Cause of Action alleges unjust enrichment and quantum meruit (id. ¶¶ 71-74).  In the Fifth Cause of Action, Plaintiff seeks a declaratory judgment that it rejected the Mazor X or revoked acceptance of the device (id. ¶¶ 76-80).  The Sixth Cause of Action alleges common law indemnification and/or contribution if Plaintiff is found liable to DLL (id. ¶¶ 82-83).

Plaintiff seeks to recover $426,232.67 for damages in each of the First, Second, Third, and Fourth Causes of Action (the same amount as the lease payment total); an Order declaring Plaintiff's rejection or revoked acceptance of the Mazor X in the Fifth Cause of Action; and in the Sixth Cause of Action Defendants' defense and indemnification of Plaintiff from DLL's lawsuit (id., WHEREFORE Cl.).

   B.  Proceedings

Plaintiff filed its suit in New York Supreme Court, Erie County (Docket No. 1, Ex. B). Defendants removed this action to this Court (Docket No. 1).

Meanwhile, Plaintiff settled DLL's claims against it for breach of the Master Lease Agreement in Texas (Docket No. 5, Defs. Atty. Decl. ¶ 4, Ex. 2; Docket No. 9, Pl. Memo. at 5).

### C. Motion to Dismiss (Docket No. 5)

Defendants moved to dismiss (Docket No. 5[1]) arguing that Mazor performed its obligations under the sales agreement (Docket No. 5, Defs. Memo. at 16-18). Defendants point out that the agreement expressly disclaimed implied warranties (id. at 18-19). Next, Defendants argue that Plaintiff's breach of contract and settlement of the DLL's lawsuit preclude indemnification claim and contribution was not available for this contract action (id. at 20-22, 22). Finally, Defendants assert Plaintiff accepted delivery of the Mazor X and never revoked its acceptance (id. at 22-24).

Within its response to this Motion, Plaintiff stipulates to dismissal of MRL as a Defendant (Docket No. 9, Pl. Memo. at 8).

Responses were due by August 31, 2021, and reply by September 7, 2021 (Docket No. 8). After timely submissions (Docket Nos. 9, 10), the Motion is deemed submitted without oral argument.

### III. Discussion

### A. Preliminary Matters—Claims against Defendant MRL

Defendants moved to dismiss claims against Israeli corporation MRL on personal jurisdiction grounds (Docket No. 5, Defs. Memo. at 13-14) and dismissal of the Third Cause of Action against MRL because Plaintiff had not alleged that MRL contracted with

---

[1]In support of their Motion to Dismiss, Defendants submit the Declaration of their attorney with exhibits, and their Memorandum of Law, Docket No. 5, and their Reply Memorandum, Docket No. 10.

In opposition, Plaintiff submits its Memorandum of Law, Docket No. 9.

Plaintiff (id. at 15).  Plaintiff responds by stipulating to dismissing claims against MRL because MRL is not a named party or signatory to the sales agreement (Docket No. 9, Pl. Memo. at 8).

This Court adopts the parties' stipulation and **dismisses** Mazor Robotics Ltd. as a Defendant.  This Court now considers the contentions of (and claims against) remaining Defendant, Mazor Robotics, Inc.

B.  Applicable Standards

1.  Motion to Dismiss

Under Rule 12(b)(6), the Court cannot dismiss a Complaint unless it appears "beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief."  Conley v. Gibson, 355 U.S. 41, 45-46, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957).  As the Supreme Court held in Bell Atlantic Corp. v. Twombly, 550 U.S. 554, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007), a Complaint must be dismissed pursuant to Rule 12(b)(6) if it does not plead "enough facts to state a claim to relief that is plausible on its face," id. at 570 (rejecting longstanding precedent of Conley, supra, 355 U.S. at 45-46).

To survive a motion to dismiss, the factual allegations in the Complaint "must be enough to raise a right to relief above the speculative level," Twombly, supra, 550 U.S. at 555; Hicks, supra, 2007 U.S. Dist. LEXIS 39163, at *5.  As reaffirmed by the Court in Ashcroft v. Iqbal, 556 U.S. 662, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009),

> "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.' [Twombly, supra, 550 U.S.] at 570 . . . .  A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. Id., at 556 . . . .  The plausibility standard is not akin to a 'probability

requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully. <u>Ibid.</u> Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of "entitlement to relief."' <u>Id.</u>, at 557 . . . (brackets omitted)."

<u>Iqbal</u>, <u>supra</u>, 556 U.S. at 678 (citations omitted).

A Rule 12(b)(6) motion is addressed to the face of the pleading. The pleading is deemed to include any document attached to it as an exhibit, Fed. R. Civ. P. 10(c), or any document incorporated in it by reference, <u>Goldman v. Belden</u>, 754 F.2d 1059 (2d Cir. 1985).

In considering such a motion, the Court must accept as true all the well pleaded facts alleged in the Complaint. <u>Bloor v. Carro, Spanbock, Londin, Rodman & Fass</u>, 754 F.2d 57 (2d Cir. 1985). However, conclusory allegations that merely state the general legal conclusions necessary to prevail on the merits and are unsupported by factual averments will not be accepted as true. <u>New York State Teamsters Council Health and Hosp. Fund v. Centrus Pharmacy Solutions</u>, 235 F. Supp. 2d 123 (N.D.N.Y. 2002).

2. Choice of Law

In diversity cases, federal court applies the substantive law of the jurisdiction where the Court sits, here those of New York, <u>see</u> <u>Erie R.R. v. Tompkins</u>, 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 (1938); <u>see</u> <u>Klaxon v. Stentor Elec. Mfg. Co.</u>, 313 U.S. 487, 61 S.Ct. 1020, 85 L.Ed. 1477 (1941) (including state's choice of law regime); <u>see also</u> <u>Giarcla v. Coca-Cola Co.</u>, No. 17CV359, 2021 WL 1110397, at *3-4 (W.D.N.Y. Mar. 23, 2021) (Skretny, J.). Under New York choice of law rules, "the first step in any case presenting a potential choice of law is to determine whether there is an actual conflict between the

laws of the jurisdiction involved."   Matter of Arb. between Allstate Ins. Co. and Stolarz, 81 N.Y.2d 219, 223, 597 N.Y.S.2d 904, 905 (1993).

Plaintiff argues that New York law applies to this action, citing a provision in the sales agreement that "this Agreement and all aspects of the relationship between the parties shall be governed by the internal laws of the State of New York, exclusive of its conflict of laws principles" (Docket No. 1, Ex. A, Compl., Ex. A, Sales Agreement Article 10; Docket No. 9, Pl. Memo. at 7, 7-8).

Absent a conflict, this Court will apply New York substantive law (including New York's version of the Uniform Commercial Code).

This Court next considers Defendant Mazor's arguments resisting Plaintiff's claims in this order:  those opposing the Second Cause of Action alleging a breach of implied warranties; then opposition to the breach of express warranties and breach of contract alleged in the First and Third Causes of Action; next those against quasi-contract alternative claims of the Fourth Cause of Action; then those denying declaratory judgment of the Fifth Cause of Action; and Mazor's opposition to common law indemnification sought in the Sixth Cause of Action.

### C.  Breach of Implied Warranty, Second Cause of Action

#### 1.  Applicable Standards

Plaintiff alleges in its Second Cause of Action breach of the implied warranty of merchantability (Docket No. 1, Ex. A, Compl. ¶¶ 53-58).  This implied warranty of merchantability warrants that "the goods shall be merchantable is implied in a contract for their sale if the seller is a merchant with respect to goods of that kind," N.Y. U.C.C. § 2-

314(1) (Docket No. 9, Pl. Memo. at 12).  Goods are merchantable if they are "fit for the ordinary purpose for which such goods are used," id. § 2-314(2)(c) (id.).

To plead a breach of the implied warranty, "a plaintiff 'must show that the product was not reasonably fit for its intended purpose, an inquiry that focuses on the expectations for the performance of the product when used in the customary, usual[,] and reasonably foreseeable manners,' Porrazzo v. Bumble Bee Foods, LLC, 822 F. Supp.2d 406, 420-21 (S.D.N.Y. 2011) (citation omitted)," Bertini v. Smith & Nephew, Inc., 8 F. Supp.3d 246, 259-60 (E.D.N.Y. 2014) (see also id.).

Parties may agree to disclaim implied warranties, N.Y. U.C.C. § 2-316; see also Maltz v. Union Carbide Chems. & Plastics Co., 992 F. Supp. 286, 304 (S.D.N.Y. 1998) (Docket No. 5, Defs. Memo. at 18; cf. Docket No. 9, Pl. Memo. at 12).  This disclaimer, however, must be in writing and conspicuous, N.Y. U.C.C. § 2-316(2).  Whether a text is sufficiently conspicuous is a question of law, N.Y. U.C.C. § 1-201(10) (2014); Carbo Indus., Inc. v. Becker Chevrolet, Inc., 112 A.D.2d 336, 339, 491 N.Y.S.2d 786, 789 (2d Dep't 1985) (Docket No. 9, Pl. Memo. at 13).

To be conspicuous, the term or clause is

"so written that a reasonable person against whom it is to operate ought to have noticed it.  A printed heading in capitals . . . is conspicuous.  Language in the body of a form is 'conspicuous' if it is in larger or other contrasting type or color ... Whether a term or clause is 'conspicuous' or not is for decision by the court,"

Direct Capital Corp. v. New ABI Inc., 13 Misc.3d 1151, 1162-63, 822 N.Y.S.2d 684, 693 (Sup. Ct. Kings County 2006) (quoting N.Y. U.C.C. § 1-201(10) (2006)).

The current version of U.C.C. § 1-201(10) now defines conspicuous "with reference to a term, means so written, displayed, or presented that a reasonable person

against which it is to operate ought to have noticed it.  Whether a term is 'conspicuous' or not is a decision for the court," N.Y. U.C.C. § 1-201(10) (2014).  As thus amended, the U.C.C. provision does not contain examples of what would make the text conspicuous or "attention-calling."  This section as amended retains the test "whether attention can reasonably be expected to be called to it.  The statutory language should not be construed to permit a result that is inconsistent with that test," N.Y. U.C.C. § 1-201 Editor's and Revisor's Notes, L. 2014, Ch. 505.

Cases have held that the disclaimer text must be distinct from the rest of the agreement's text, such as being printed in capitalized text or in a larger size font than the remaining text, e.g., Rochester-Genesee Reg'l Trans. Auth. v. Cummins Inc., No. 09CV6370, 2010 WL 2998768, at *5 (W.D.N.Y. July 28, 2010) (Telesca, J.); in boldface text, e.g., Kolle v. Mainship Corp., No. 04CV711(TCP)(MLO), 2006 WL 1085067, at *4 (E.D.N.Y. Apr. 20, 2006) (defendant's exclusion in boldface, all capital letters, with a boldface heading held sufficiently conspicuous); or in text physically separate from the bulk of the agreement's text, e.g., Con Tel Credit Corp. v. Mr. Jay Appliances & TV, 128 A.D.2d 668, 668, 513 N.Y.S.2d 166, 167 (2d Dep't 1987) (disclaimer in bold print and above signature lines held sufficiently conspicuous) (Docket No. 9, Pl. Memo. at 13, citing cases; Docket No. 10, Defs. Reply Memo. at 4, citing cases). The cases, however, do not mandate formats for conspicuousness.

### 2.  Parties' Contentions

Defendant Mazor argues that the Sales Agreement expressly disclaimed any implied warranty (Docket No. 5, Defs. Memo. at 9, 18-19).  In all capital letters, the Sales Agreement expressly disclaims any implied warranty as consistent with law (Docket

No. 1, Ex. A, Compl., Ex. A, Sales Agreement Article § 6.1.4), including disclaiming implied warranties of title, merchantability, and fitness (id.; Docket No. 5, Defs. Memo. at 19, 18).  Defendant Mazor also points out that the Sales Agreement provided the "sole and exclusive remedy" to Plaintiff of repair or replacement of the device or (at Mazor's discretion) a refund (Docket No. 5, Def. Memo. at 8; Docket No. 1, Ex. A, Compl., Ex. A, Sales Agreement, § 6.1.2).

Plaintiff responds that the disclaimer in the Sales Agreement was not sufficiently conspicuous to exclude implied warranty (Docket No. 9, Pl. Memo. at 12-14).  Although the Disclaimer § 6.1.4 is in all capital letters, Plaintiff points out that it was not in bold, contrasting typeface or in color or distinct size to sufficiently distinguish it from the text of the Agreement (id. at 13-14).  Plaintiff claims that the location of the purported Disclaimer in the middle of the Agreement also did not aid in distinguishing the Disclaimer from the rest of the text (id. at 14), see Wells Fargo Fin. Leasing, Inc. v. Kokoon, Inc., Index No. 155239/2012, 2013 WL 391439, at *15-16 (N.Y. Sup. Ct. N.Y. County Jan. 25, 2013).

In reply, Mazor argues that Plaintiff's conspicuousness argument should be rejected (Docket No. 10, Defs. Reply Memo. at 3-5), concluding that the Disclaimer here need not be in boldface type to be sufficiently conspicuous (id. at 4).

### 3.  Analysis

The Uniform Commercial Code requires conspicuous text to waive implied warranties but does not specify the methods for providing conspicuous text.  Conspicuousness is as a reasonable person would find the text.  As noted, the U.C.C. once gave examples of what a reasonable person ought to conclude is conspicuous (such as use of boldface or contrasting color text), N.Y. U.C.C. § 1-201(10) (2001), but those

examples were removed in 2014 in favor of the simple reasonableness test, id. § 1-201(10) (2014).  According to the Code's revisor notes, conspicuousness of a term is left to the courts to determine and although the Code list "some of the methods for making a term attention-calling, the test is whether attention can reasonably be expected to be called to it," N.Y. U.C.C. § 1-201 Editor's and Revisor's Notes L. 2014, Ch. 505.

The manner of conspicuousness of the disclaimers held in cases noted by Plaintiff (Docket No. 9, Pl. Memo. at 13) are alternatives.  New York case law does not require a contractor to use multiple methods or any specific method to render the disclaiming text conspicuous.  Plaintiff acknowledged this by listing its distinguishing methods as "and/or" options (id.).  The standard is whether a reasonable person would construe the text at issue as being distinct.

This Court compares the text of the Sales Agreement (Docket No. 1, Ex. A, Compl., Ex. A) and its Section 6.1.4, the Disclaimer provision, to determine if the latter is conspicuous from the rest of the Sales Agreement.  This Court applies the standard of a reasonable person reviewing these terms.  The Disclaimer is part of Article 6 for "Warranties and Limitations" provision of the Agreement (id., Article 6).  With all section headings in bold and the text generally in normal font size (except for some defined terms that are underlined or in bold), the Disclaimer is in normal, all capital letters not in boldface or in different ink.  This is the same text format as the next section for Limitation of Liability, Section 6.2, and a prior section listing exclusive remedies, Section 5.4 (id. §§ 6.1.4, 6.2, 5.4).  These three capitalized sections are the only ones in the Sales Agreement and each section purports to limit Defendant's liability and available remedies.  This Disclaimer is on the fifth page of an eight-page Agreement (excluding the signature page).

Despite its location in the middle of the Agreement, this Disclaimer is conspicuous from the rest of the text to be an enforceable disclaimer of the implied warranty.

Plaintiff lists the methods for the text being conspicuous (such as large, boldface, contrasting type or ink color, location in an eye-catching location such as before the signature page) and would require use of multiple devices to have a conspicuous waiver (Docket No. 9, Pl. Memo. at 13).  But the law does not require use of multiple, distinguishing devices to make a disclaimer text distinct.  The cases cited by both sides present examples of disclaimers that were held to be conspicuous upon their specific facts.

Plaintiff's reliance upon Wells Fargo as requiring more than mere capitalization of the disclaimer text (cf. id. at 14) is misplaced.  In Wells Fargo, the lease there contained a disclaimer of all warranties that the court found was "clearly conspicuous, in capital letters, on the face of the lease and appears directly above the signatures of the parties to the agreement," and the court noting that the disclaimer also complied with other provisions of the Uniform Commercial Code governing leases, 2013 WL 391439, at *15 (citing N.Y. U.C.C. §§ 2A-214, 1-201(10)).  The court cited precedent rejecting a disclaimer buried in the text of a six-page document and with typeface identical to the balance of the document, id. (citing Direct Capital Corp. supra, 13 Misc.3d 1151, 822 N.Y.S.2d 684), but did not hold that an eye-catching location such as before the signature page was required to make a disclaimer effective.

The Sales Agreement Disclaimer text here differs from the remaining text (being in ALL CAPITALS) while located in the middle of the Sales Agreement.  This Disclaimer clause stands out from the rest of the text by being the only capitalized text (with other

disclaiming provisions in the Agreement).  The surrounding text is normal font with standard capitalization.  The Disclaimer is not buried such that a reasonable person entering into that Sales Agreement would not notice it.

This Disclaimer precludes liability for breach of implied warranty.  Thus, Defendant Mazor's Motion to Dismiss the Second Cause of Action for breach of implied warranties (Docket No. 5) is granted.  This Court next considers the related express warranty and breach of contract claims, alleged in the Third and First Causes of Action (Docket No. 1, Ex. A, Compl. ¶¶ 29, 36-37, 42, 60-69, 47-51).  The alleged breached terms of the Sales Agreement were its express warranties (see id. ¶¶ 29, 36-37, 42, 61, 63).

> D.  Breach of Contract and Express Warranty, Third and First Causes of Action

> 1.  Applicable Standards

To state a breach of contract under New York common law (applicable here pursuant to the Sales Agreement, Docket No. 1, Ex. A, Compl. Ex A, Sales Agreement Art. 10), Plaintiff must allege the existence of a contract with Defendant, adequate performance of its obligations under the contract, breach of the contract by Defendant, and damages, e.g., Harsco Corp. v. Segui, 91 F.3d 337, 348 (2d Cir. 1996); Acquest Holdings, Inc. v. Travelers Cas. & Sur. Co., 217 F. Supp.3d 678, 686 (W.D.N.Y. 2016) (Wolford, J.) (see Docket No. 9, Pl. Memo. at 9).

To allege a breach of express warranty, Plaintiff must allege the existence of a material statement amounting to a warranty, Plaintiff's reliance on this warranty as basis for the contract with the immediate seller, breach of that warranty, and injury to buyer caused by that breach, Goldemberg v. Johnson & Johnson Consumer Cos., 8 F. Supp.3d 467, 482 (S.D.N.Y. 2014) (Docket No. 9, Pl. Memo. at 8).

14

2.  Parties' Contentions

Defendant Mazor argues that these causes of action fail because Plaintiff alleges Mazor's performance of its obligations under the Sales Agreement and not its breach (Docket No. 5, Defs. Memo. at 16).  Under the Agreement, the parties agreed to the sole and exclusive remedy for breach of warranty under Section 6.1.2 of the Agreement was repair or replacement of the Mazor X (id. at 17).  Mazor denies that it made any promise or representation that the Mazor X performed superior to the Renaissance device (id.). Further, Mazor expressly disclaimed all promises, representations, and warranties other than the express warranty of Section 6.1.2 (id. at 17-18).  Defendants next argue that Plaintiff fails to allege what provision of the Sales Agreement they breached to state a claim under New York law (id. at 18), see Rochester-Genesee RTA, supra, 2010 WL 2998768, at *4 (rejecting conclusory allegations of breaches of contract).

Plaintiff counters that the Complaint alleges claims for breach of expressed warranty and breach of contract (Docket No. 9, Pl. Memo. at 8-12).  There, Plaintiff asserts that Defendants warranted the Mazor X was free of defects in materials and workmanship (id. at 8).  Defendants breached the Sales Agreement by the failure of the Mazor X to perform as represented (that it would perform better that the Renaissance device, as represented by the features in the Mazor X not in the Renaissance device).  A further breach was that Mazor X was less accurate, less safe, and less efficient than the Renaissance device, and that Mazor X performed with defects.  (Id. at 9; see Docket No. 1, Ex. A, Compl. ¶¶ 12-13, Ex. A, Sales Agreement, Article 2, Certain Definitions, defining "Mazor X.")  To Plaintiff, the history of services calls for over two and a half years for the Mazor X is evidence of this breach (Docket No. 9, Pl. Memo. at 10).  Plaintiff

contends that Defendants never offered to replace the Mazor X or refund the purchase price, compelling Plaintiff to commence the present action (id. at 11).  Plaintiff concludes that Defendants cannot disclaim an express warranty, disclaimers of representations in the Sales Agreement notwithstanding (id. at 12).

Defendant Mazor replies that mere recitation of the elements for a breach of contract or breach of express warranty claims absent facts supporting these claims is insufficient (Docket No. 10, Defs. Reply Memo. at 1).  Mazor repeats its obligations under the Sales Agreement:  it warranted that the Mazor X was free of defects; if defective, it would repair or replace the device; and that repair or replacement was the exclusive remedy under the Agreement (id. at 1-2).  As to allegations that the Mazor X failed to perform better than the Renaissance device, Defendants counter that the Complaint does not identify a provision of the Sales Agreement that makes this representation (id. at 2).  Further, the number of service visits for the Mazor X was not capped and does not show a breach of contract (id.).

### 3.  Analysis

#### a.  Breach of Express Warranty

Applying the elements for an express warranty claim of the First Cause of Action, see Goldemberg, supra, 8 F. Supp.3d at 482, Plaintiff alleges the existence of an express warranty that Defendants' device would be free from defects (Docket No. 1, Ex. A, Compl. ¶¶ 48, 24, Ex. A, Sales Agreement § 6.1.2).  Plaintiff alleges reliance on Defendants' warranty as a basis for the Sales Agreement (id. ¶ 45).

Plaintiff alleges a breach of the express warranty because of repeated failures of the Mazor X (id. ¶¶ 49-50, 30, 35-37).  Defendant Mazor requires Plaintiff to allege that

Mazor refused to repair or replace the device to allege a breach of its warranty (Docket No. 5, Defs. Memo. at 17).  That allegation, however, is unnecessary.  Plaintiff may allege breach of Mazor's express warranties and show Plaintiff's reliance upon the warranties. Plaintiff, however, alleges a breach of the warranty that the device was free of defect. Mazor's contention goes to the last element of the breach of warranty claim of injury resulting from the breach.  That alleged injury to Plaintiff caused by the breach of warranty, however, is problematic.

Plaintiff seeks to recover damages (at least $426,232.67 or the total lease payments made by Plaintiff for the defective Mazor X) for the breach of express warranty (id. ¶¶ 51, 41).  Plaintiff, however, fails to allege how the breach of the express warranty led to damages that equal Plaintiff's lease payments.  Furthermore, by its terms, the express warranty does not provide recovery of damages as relief; it is limited to repair or replacement of the device.  Section 6.1.2 of the Sales Agreement provides that Defendant Mazor warrants the device was free from defects in materials and workmanship and the Mazor software conforms to the specifications from Mazor for twelve months from installation (Docket No. 1, Ex. A, Compl., Ex. A, Sales Agreement § 6.1.2).  This warranty was in effect "upon acceptance of the System" (id.).  If defective, the Mazor X is shipped to Defendants' facility for repair (id.).  This warranty declares that the sole remedy is repair or replacement of the device (id.; see Docket No. 5, Defs. Memo. at 16-17).  Defendants made repairs and Plaintiff has not alleged that Defendants had failed to repair or offer replacement of the device.

While Defendants warranted that the Mazor X was free of defect, the exclusive remedy when that device was defective was repair or replacement, not damages alleged

by Plaintiff for lease payments made for the defective device.  Plaintiff has not alleged that Defendants have not failed to repair the Mazor X and Plaintiff has not sought replacement of the defective device (or allege Defendants' refusal to replace) despite arguing that Defendants never offered replacement (cf. Docket No. 9, Pl. Memo. at 11). Plaintiff has not sufficiently alleged breach of the express warranty under the Sales Agreement.  Thus, Defendants' Motion to Dismiss the First Cause of Action alleging breach of express warranty is granted.

b.  Breach of Contact

Applying the elements for a breach of contract as alleged in the Third Cause of Action, e.g., Harsco Corp., supra, 91 F.3d at 348, Plaintiff alleges the existence of a contract (see generally Docket No. 1, Ex. A, Compl.) but not that the Sales Agreement includes a provision that Defendants represented that the Mazor X would perform better than Defendants' Renaissance device.  Although Plaintiff may have entered the Sales Agreement based upon representations about Mazor X and its capabilities (see id. ¶¶ 11-15, 22, 60), the Agreement itself made does not include any representations as to the quality and performance of the Mazor X.  Furthermore, the Agreement was for purchase of a Renaissance device until Mazor X became available.  (See id., Ex. A, Sales Agreement Article 1, Article 3, § 3.1, Article 9.)

Plaintiff has alleged that it performed its obligations by entering the DLL Master Lease Agreement to pay Defendants for the Mazor X (Docket No. 1, Ex. A, Compl. ¶¶ 22-23, Ex. B, DLL Master Lease).

Allegations of breach of the Sales Agreement and damages therefrom, however, are at issue.  While Plaintiff purports to allege these elements in the Complaint (Docket

18

No. 1, Ex. A, Compl. ¶¶ 26-42, 59-69), it remains unclear how the Sales Agreement was breached.  Plaintiff construes the Agreement as Defendants furnishing a device better than the Renaissance system that Plaintiff already owned.  As Defendants observe (Docket No. 5, Defs. Memo. at 17-18), the Sales Agreement does not promise or represent that Mazor X would perform better than the Renaissance device and that the Agreement expressly disclaimed any promises and representations (Docket No. 1, Ex. A, Compl., Ex. A, Sales Agreement § 6.1.4).

Plaintiff's complaints, however, are not to the quality and performance of Mazor X as compared with the Renaissance device; its complaints were about Mazor X's availability to perform due to repeated defects and repairs.

These objections rest on the express warranty that the Mazor X would be free from defects and the limited remedy for defects being repair or replacement.  The Complaint incorporated Defendants' schedule of repairs of the device from January 2017 to July 2019, noting resolution of the various problems (Docket No. 1, Ex. A, Compl. ¶ 36, Ex. C; see Docket No. 5, Defs. Memo. at 17).

Plaintiff's history of repairs on the Mazor X differs from the problems in Murphy v. Mallard Coach Co., 179 A.D.2d 187, 582 N.Y.S.2d 528 (3d Dep't 1992), cited favorably by Plaintiff (cf. Docket No. 9, Pl. Memo. at 10-11).  In Murphy, Plaintiffs Anne Murphy and her spouse purchased a recreational vehicle from defendant which contained defects in its plumbing.  The Murphys thrice sought repairs of the plumbing where the inspection after the last repair revealed a hole in the shower area, a crack in the tub, and defects in the installation of the replacement carpeting, leading plaintiffs to believe that it was not properly repaired.  Murphy, supra, 179 A.D.2d at 190-91, 582 N.Y.S.2d at 529-30.  The

court thus held that, given the repeated and shoddy attempts at repair, the Murphys were not required to seek further repairs of the faulty plumbing under the warranty, see id. at 193, 582 N.Y.S.2d at 532 (id.).

For over a two-and-a-half-year period, Plaintiff here noted different problems with the Mazor X, with the repair schedule attached to the Complaint indicating the repair and resolution of each item (see Docket No. 1, Ex. A, Compl., Ex. C).  No one claims that Defendants failed or refused to repair the device in 2018 and 2019, after the twelve-month warranty from installation expired.  Plaintiff now contends that Defendants never offered replacement of the Mazor X for the over two years in service (Docket No. 9, Pl. Memo. at 11) but Plaintiff never alleged that it sought a replacement or the absence of replacement in the Complaint.

This Complaint fails to allege the breach of the Sales Agreement.  Therefore, Defendants' Motion to Dismiss the Third Cause of Action (Docket No. 5) alleging breach of contract is granted.

### E.  Unjust Enrichment or Quantum Meruit, Fourth Cause of Action

#### 1.  Applicable Standards

In the Fourth Cause of Action, Plaintiff alternatively alleges Defendants were unjustly enriched from the lease of the defective Mazor X to Plaintiff (Docket No. 1, Ex. A, Compl. ¶¶ 71-74; see Docket No. 9, Pl. Memo. at 14).

To state an unjust enrichment claim, Plaintiff needs to allege that Defendant was enriched at Plaintiff's expense, and equity and good conscience do not permit Defendant to retain what is sought to be recovered, Mandarin Trading Ltd. v. Wilderstein, 16 N.Y.3d

173, 182, 919 N.Y.S.2d 465, 471 (2011) (see Docket No. 5, Defs. Memo. at 19; Docket No. 9, Pl. Memo. at 15-16).

The existence of a valid and enforceable written contract, however, precludes alternative recovery under an unjust enrichment theory, Sergeants Benevolent Ass'n Annuity Fund v. Renck, 19 A.D.3d 107, 112, 796 N.Y.S.2d 77, 81 (1st Dep't 2005) (see id.).  A contract and unjust enrichment claim may be pled in the alternative, see Fed. R. Civ. P. 8(d)(2) (see Docket No. 9, Pl. Memo. at 14), but only if the validity of the contact is also questioned.  Unjust enrichment "may not be plead [sic] in the alternative alongside a claim that the defendant breached an enforceable contract," King's Choice Neckwear, Inc. v. Pitney Bowes, Inc., No. 09 Civ. 3980 (DLC), 2009 WL 5033960, at *7 (S.D.N.Y. Dec. 23, 2009); see also, e.g., Bristol Village, Inc. v. Louisiana-Pacific Corp., 916 F. Supp.2d 357, 367 (W.D.N.Y. 2013) (Skretny, C.J.) (unjust enrichment claim is unavailable as alternative pleading where it duplicates express warranty claim under an undisputed contract).

### 2.  Parties' Contentions

Defendant Mazor argues that the existence of the Sales Agreement precludes an unjust enrichment/quantum meruit claim (Docket No. 5, Defs. Memo. at 19-20).  An unjust enrichment claim would have been appropriate only where the validity of the Sales Agreement here was disputed.  Absent (as here) an allegation challenging the existence or validity of the Sales Agreement, alternative pleading of quasi-contract claims is misplaced (id.; Docket No. 10, Defs. Reply Memo. at 5-7).  Further, Plaintiff's quantum meruit claim is based upon the Sales Agreement (Docket No. 5, Defs. Memo. at 20; see Docket No. 1, Ex. A, Compl. ¶¶ 71, 73).

Plaintiff responds that it can plead quasi-contract claims in the alternative to its contract claims under Federal Rule of Civil Procedure 8 and New York law (Docket No. 9, Pl. Memo. at 14-16).  Plaintiff recites that it alleged that Defendants were enriched from the sale of the Mazor X device; this enrichment was at Plaintiff's expense; and it would be against equity and good conscience to permit Defendants to retain the benefits of the sale (id. at 16).

Defendant Mazor replies that Plaintiff cannot maintain an unjust enrichment claim because it does not contest the existence of a valid, enforceable contract (Docket No. 10, Defs. Reply Memo. at 5-6, citing, e.g., Network Enters., Inc. v. Reality Racing, Inc., No. 09 Civ. 4664(RJS), 2010 WL 3529237, at *7 (S.D.N.Y. Aug. 24, 2010).  Plaintiff fails to allege a dispute over the validity of the Sales Agreement to allow for alternative pleading for quantum meruit and unjust enrichment (id. at 6, citing cases).

3.  Analysis

Plaintiff cites New York cases (Docket No. 9, Pl. Memo. at 15, 16, for example, ARB Upstate Commc'ns LLC v. R.J. Rental, L.L.C., 93 A.D.3d 929, 934, 940 N.Y.S.2d 679, 686 (3d Dep't 2012); Stern v. H. Dimarzo Inc., 19 Misc.3d 1144A, at *17, 867 N.Y.S.2d 20 (Table) (Sup. Ct. Westchester County 2008) ("no signed writing of unquestioned validity in this case")) that allow alternative pleading of breach of contract and quasi-contract claims.

As a diversity action, however, the governing procedural rules are the Federal Rules of Civil Procedure, e.g., Atwal v. NortonLifeLock, Inc., No. 20CV449, 2022 WL 327471, at *3 (W.D.N.Y. Feb. 3, 2022) (Skretny, J.) (citing cases), here Federal Rule of

Civil Procedure 8, and not New York State procedural rules.  Invocation of New York State cases based upon the CPLR and other state procedural rules can be disregarded here.

Rule 8 allows alternative pleading.  Plaintiff is correct (to a point) that it can allege alternatively breach of contract and unjust enrichment "but only if there is a 'bona fide dispute concerning existence of a contract or whether the contract covers the dispute in issue,'" MF Global Holdings Ltd. v. PricewaterhouseCoopers LLP, 43 F. Supp. 3d 309, 317 (S.D.N.Y. 2014) (quoting Fantozzi v. Axsys Techs., Inc., No. 07 Civ. 02667, 2008 WL 4866054, at *7 (S.D.N.Y. Nov. 6, 2008) (internal quotation omitted)).  Plaintiff, however, cannot allege claims under a presumably valid contract and alternatively quantum meruit or unjust enrichment.  Plaintiff here does not dispute the existence or validity of the Sales Agreement to permit alternative pleading of quasi-contractual relief.

Defendant Mazor cites MF Global Holdings Ltd., supra, 43 F. Supp.3d at 317 (Docket No. 5, Defs. Memo. at 19-20), for its dismissal of plaintiff's alternative unjust enrichment claims.  There, MF Global Holdings alleged breach of contract and unjust enrichment, id. at 316, 317.  Defendants moved to dismiss, id. at 311.  The parties did not dispute that "written agreements cover the claims," id. at 317.  The court then dismissed MF Global Holdings' alternative unjust enrichment claims, id.

Here, Plaintiff's claim arises from the Sales Agreement.  Any unjust enrichment or quantum meruit comes from that Agreement.  There is no question whether that Agreement covered furnishing the Mazor X or whether it was a valid contract.  Absent allegations doubting the validity of the Sales Agreement, Plaintiff cannot also argue quasi-contractual theories of defense liability.  Plaintiff cannot here alternatively argue breach of contract or express warranties under the Sales Agreement (accepting the validity of

that Agreement) and entitlement for relief from unjust enrichment which presumes the absence of a valid contract, e.g., Bristol Village, supra, 916 F. Supp.2d at 367.

Thus, Defendants' Motion to Dismiss (Docket No. 5) the Fourth Cause of Action for unjust enrichment or quantum meruit is granted.

### F.  Declaratory Judgment, Fifth Cause of Action

#### 1.  Applicable Standards

The Fifth Cause of Action seeks a declaration that Plaintiff either never formally accepted the Mazor X or that it revoked any acceptance that might have been given (Docket No. 1, Ex. A, Compl. ¶¶ 38, 76-80).

Upon removal to this Court, see 28 U.S.C. § 1447(a), federal procedures (including for declaratory judgment) apply.  Under 28 U.S.C. § 2201(a), where there is an actual controversy within this Court's jurisdiction, this Court "upon the filing of an appropriate pleading, may declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought.  Any such declaration shall have the force and effect of a final judgment or decree," 28 U.S.C. § 2201(a).

This Court retains what the Supreme Court terms "unique and substantial discretion in deciding whether to" issue declaratory relief, Wilton v. Seven Falls Co., 515 U.S. 277, 286, 115 S.Ct. 2137, 132 L.Ed.2d 214 (1995); MedImmune, Inc. v. Genentech, Inc., 549 U.S. 118, 136, 127 S.Ct. 764, 166 L.Ed.2d 604 (2007) (under 28 U.S.C. § 2201(a), the court "may declare the rights").  To decide whether to entertain declaratory judgment relief, "courts should consider:  '(1) whether the judgment will serve a useful purpose in clarifying or settling the legal issues involved; and (2) whether

judgment would finalize the controversy and offer relief from uncertainty," <u>Duane Reade,</u> <u>Inc. v. St. Paul Fire & Marine Ins. Co.</u>, 411 F.3d 384, 389 (2d Cir. 2005).

Under the Uniform Commercial Code, a buyer may reject goods "within a reasonable time after their delivery" upon the buyer seasonably notifying the seller, N.Y. U.C.C. § 2-602(1) (Docket No. 5, Defs. Memo. at 22).  Rejection of goods must be unequivocal, <u>Maggio Importato, Inc. v. Cimitron Inc.</u>, 189 A.D.2d 654, 654-55, 592 N.Y.S.2d 325, 326 (1st Dep't 1993) (<u>id.</u> at 22-23).  Mere complaints about the goods does not constitute a clear and unequivocal act of rejection, <u>id.</u> at 654, 592 N.Y.S.2d at 326.

2.  Parties' Contentions

Mazor argues that Plaintiff accepted delivery of the Mazor X and Plaintiff has not alleged any acts of rejection or revocation to justify declaratory judgment in its favor (Docket No. 5, Defs. Memo. at 22-24).  Mazor contends that Plaintiff makes its conclusory allegation of never accepting the Mazor X without any facts to support the contention (<u>id.</u> at 23).  Plaintiff's allegations are to the contrary, establishing its acceptance of the device without rejection, retaining that device for over two years (<u>id.</u> at 22, 23-24).  Mazor next contends that the duration of Plaintiff's delay in rejecting the device is unreasonable as a matter of law (Docket No. 10, Defs. Reply Memo. at 8 n.1, citing <u>Sherkate Sahami Khass</u> <u>Rapol (Rapol Constr. Co.) v. Henry R. Jahn & Son, Inc.</u>, 701 F.2d 1049, 1051 (2d Cir. 1983); <u>Brown & Lowe Co. v. Potolski</u>, 221 A.D. 299, 300, 223 N.Y.S.2d 71, 73 (3rd Dep't 1927) (where use of machine for 16 months before attempted rejection, reasonableness of time held question of law)).

25

Plaintiff responds that Defendant is seeking a ruling on the merits of the declaratory judgment in this Motion to Dismiss rather than contesting the allegation of a declaratory judgment claim (which Plaintiff asserts it alleged) (Docket No. 9, Pl. Memo. at 19).  Plaintiff rejects Defendants' timeliness arguments for the declaratory judgment claim (id. at 19-21).  Rather, Plaintiff contends that the defense arguments are properly addressed on summary judgment rather than whether a claim was alleged as contested in a Motion to Dismiss (id. at 20).  Plaintiff claims that the Mazor X was not used consistently since its delivery in 2017 due to its defects and repairs (id.).  Plaintiff concludes that it alleged a justiciable controversy whether it either accepted the device or revoked acceptance (id. at 21).

In reply, Defendants argue that Plaintiff never alleged any acts of its rejection of the Mazor X or any notice of its rejection to Mazor (Docket No. 10, Defs. Reply Memo. at 8-9).  The Complaint also failed to allege acts of revocation that occurred within a reasonable time (id. at 8).  While the reasonableness of the time of revocation is usually a fact question (see Docket 9, Pl. Memo. at 19), Defendants counter that the over two-and-half-year delay in a purported revocation or rejection can be deemed to be unreasonable as a matter of law (Docket No. 10, Defs. Reply Memo. at 8 & n.1).

### 3.  Analysis

Plaintiff possessed the Mazor X device for over two and a half years before the alleged rejection or revocation of its former acceptance.  Although conclusively alleging Plaintiff never accepted the Mazor X (Docket No. 1, Ex. A, Compl. ¶ 38), Plaintiff does not allege facts of its nonacceptance.  Taking the Complaint as the notice of its present nonacceptance or rejection, Plaintiff did not produce or refer to any prior notice of its

nonacceptance or rejection of that device (<u>but cf.</u> Docket No. 1, Ex. A, Compl. ¶ 78 (alleging after notice of rejection or revocation of acceptance Plaintiff alleged holding Mazor X in reasonable care)).  The only rejection notice was the Complaint itself (<u>see</u> Docket No. 1, Ex. A, Compl. ¶¶ 67 (if deemed to have accepted the Mazor X, Plaintiff now revokes acceptance), 38 (Plaintiff claims it never accepted the Mazor X)).  There are issues of fact whether and, if so, when, Plaintiff rejected the device or revoked any prior acceptance.

This Court, however, need not address at this time the issue whether Plaintiff refused the device, rejected it, or revoked a prior acceptance in this Motion.  These are fact issues beyond the pleadings or a Rule 12 Motion to Dismiss.  But this Court can address the reasonableness of the time Plaintiff possessed the Mazor X before it purportedly revoked acceptance.  Under New York law, the reasonableness of the duration a buyer takes to reject goods usually is an issue of fact, <u>e.g.</u>, <u>Sherkate Sahami Khass Rapol</u>, <u>supra</u>, 701 F.2d at 1051 (citing New York cases); <u>Brown & Lowe Co.</u>, <u>supra</u>, 221 A.D. at 300, 223 N.Y.S. at 73.  When the duration is unreasonably long, however, it becomes an issue of law, <u>Brown & Lowe Co.</u>, <u>supra</u>, 221 A.D. at 300, 223 N.Y.S. at 73.

In <u>Brown & Lowe Co.</u>, <u>supra</u>, 221 A.D. at 300, 223 N.Y.S. at 72, defendant Henry Potolski received a road machine to "try it out" before purchasing it but without specifying how long Potolski could use that machine.  Potolski used the machine for 16 months on several projects without payment or return until he attempted to return it as unsatisfactory. The court held that, although the reasonable time of retention was usually a question of fact, the 16-month period without notice of rejection was more than reasonable time as a matter of law, concluding that title thus passed to Potolski, <u>id.</u> at 300, 223 N.Y.S. at 72-

73.  The court affirmed rejection of Potolski's defense based upon revocation, id. at 301, 223 N.Y.S. at 73.

Here, Plaintiff alleged possession of the Mazor X for over two and a half years before announcing in this Complaint rejection of the device or revocation of any prior acceptance of it (Docket No. 1, Ex. A, Compl. ¶¶ 27, 36).  As a matter of law, this prolonged period of Plaintiff's possession before rejection or revocation of acceptance is not reasonable as a matter of law, id. at 300, 223 N.Y.S. at 72-73.  There are no conflicting inferences from this period to deem the reasonableness of the delay in revocation a fact question, id. at 301, 223 N.Y.S. at 73.  Thus, Plaintiff's eventual rejection was unreasonable as a matter of law and its request for declaratory relief to the contrary is denied.

Plaintiff alleges revoking acceptance upon discovery of the defects in the device and Defendants' failure "to seasonably cure the non-conformities" (id. ¶ 77).  The Complaint (cf. id. ¶ 37, listing repair issues), however, attaches the repair schedule (id., Ex. C) listing completed repairs.  It does not state that these repairs did not cure the defects found.  The Complaint generally does not allege repeated repairs but the closest to multiple repairs listed in the repair schedule are the repairs to the X-eye communication on February 28, March 25, 2017, July 16, and July 17, 2018, and two entries for "damaged accessories" repaired on November 28 and December 11, 2017, but for different accessories (id., Ex. C).  The repair schedule notes that Mazor repaired aspects of the X-eye system (id.).

Plaintiff alternatively invokes the express warranty from Defendants contained in the Sales Agreement, but the warranty in Sales Agreement was effective only upon

acceptance of the Mazor system (Docket No. 1, Ex. A, Compl. ¶¶ 46-51, Ex. A, Sales Agreement § 6.1.2).   If Plaintiff obtains declaratory judgment that it did not accept or rejected acceptance of the Mazor X, then the Sales Agreement warranty is not applicable upon either non-acceptance or rejection.

Therefore, Defendant's Motion to Dismiss (Docket No. 5) the Fifth Cause of Action for declaratory judgment is granted.

### G.  Common Law Indemnification and Contribution, Sixth Cause of Action

#### 1.  Applicable Standards

Finally, Plaintiff seeks indemnification in the Sixth Cause of Action from claims against it by its lessor, DLL, for nonpayment of the lease for the allegedly defective Mazor X (Docket No. 1, Ex. A, Compl. ¶¶ 82-83).   Plaintiff settled DLL's unpaid lease claims (see Docket No. 5, Defs. Atty. Decl. ¶ 4, Ex. 2; Docket No. 9, Pl. Memo. at 5).

Common law indemnification permits a party who was compelled to pay to seek recovery from a second party, McCarthy v. Turner Constr., 17 N.Y.3d 369, 375, 929 N.Y.S.2d 556 (2011) (indemnification in personal injury action); D'Ambrosio v. City of N.Y., 55 N.Y.2d 454, 460, 450 N.Y.S.2d 149, 151 (1982) (personal injury) (Docket No. 9, Pl. Memo. at 16-17).   Common law indemnification "is generally available 'in favor of one who is held responsible solely by operation of law because of his relation to the actual wrongdoer,'" McCarthy, supra, 17 N.Y.3d at 375, 929 N.Y.S.2d at 560-61 (quoting Mas v. Two Bridges Ass'n, 75 N.Y.2d 680, 690, 555 N.Y.S.2d 669, 674 (1990) (negligence)). "Consistent with the equitable underpinnings of common-law indemnification, our case law imposes indemnification obligations upon those actively at fault in bringing about the

injury, and thus reflects an inherent fairness as to which party should be held liable for indemnity," id. at 375, 929 N.Y.S.2d at 561.

The right to indemnification also arises from a contract (not provided for here) or may be implied "'upon the law's notion of what is fair and proper between the parties,'" id. at 374-75, 929 N.Y.S.2d at 560 (quoting Mas, supra, 75 N.Y.2d at 690, 555 N.Y.S.2d at 674).

A party who has settled and seeks indemnification from a third party "must show that it may not be held responsible in any degree," Rosado v. Proctor & Schwartz, 66 N.Y.2d 21, 24-25, 494 N.Y.S.2d 851, 854 (1985); Allstate Ins. Co. v. State of N.Y., 152 Misc.2d 869, 871, 579 N.Y.S.2d 308, 310 (Ct. Cl. 1991).  The New York State Court of Appeals in Rosado "considered an alleged implied contractual indemnity, examined the effect of settlement by a party who professes not to be a tortfeasor, and concluded that there was no basis for implied indemnity," Allstate Ins., supra, 152 Misc.2d at 871, 579 N.Y.S.2d at 310; see Rosado, supra, 66 N.Y.2d 21, 494 N.Y.S.2d 851.

### 2.  Parties' Contentions

Defendant Mazor argues that indemnification does not apply in a contract dispute or outside of torts (Docket No. 5, Defs. Memo. at 22 (citing N.Y. CPLR 4101); Docket No. 10, Defs. Reply Memo. at 7-8).  Contribution also is not available for a contract dispute (Docket No. 5, Defs. Memo. at 22).  Plaintiff also cannot be indemnified for its own breach of the lease contract (id. at 20-21).  Furthermore, Plaintiff settled its contract dispute with DLL and settlement of a claim precludes contribution or indemnification (id. at 20, 21-22).

Plaintiff responds that it has stated a claim for indemnification (Docket No. 9, Pl. Memo. at 16-18).   While settlement of the underlying claim does not preclude

30

indemnification (id. at 17), Spring Sheet Metal & Roofing Co. v. Koppers Indus., 273 A.D.2d 789, 789-90, 710 N.Y.S.2d 743, 744 (4th Dep't 2000), Plaintiff denies being responsible for the defects in the Mazor X that led to Plaintiff defaulting on the lease payments to DLL thus indemnification remains available (id. at 18).

In a footnote, Plaintiff now disclaims recovery on a theory of contribution (id. at 16 n.1).

### 3.  Analysis

Considering first the contribution theory, Plaintiff now disclaims this theory (id.). Therefore, Defendants' Motion to Dismiss (Docket No. 5) the contribution claim is granted.

The Sales Agreement contains indemnification provisions, but these cover infringement of intellectual property asserted by a third party (Docket No. 1, Ex. A, Compl. Ex. A, Sales Agreement Article 5).  There is no provision for Defendants indemnifying Plaintiff for unpaid lease payments for the Mazor X or for leasing a defective product.

Plaintiff cites cases for common law indemnification that arose from personal injuries, McCarthy, supra, 17 N.Y.3d at 372-73, 375, 929 N.Y.S.2d at 558; D'Ambrosio, supra, 55 N.Y.2d at 457-58, 460, 450 N.Y.S.2d at 150, 151; Mas, supra, 75 N.Y.2d at 683-84, 555 N.Y.S.2d 670; Curreri v. Heritage Props. Inv. Trust Inc., 48 A.D.3d 505, 505-06, 852 N.Y.S.2d 278, 280 (2d Dep't 2008); Kingsbrook Jewish Med. Ctr. v. Islam, 172 A.D.3d 1342, 1342-43, 99 N.Y.S.3d 670, 671 (2d Dep't 2019); Sarmineto v. Klar Realty Corp., 35 A.D.3d 834, 835, 829 N.Y.S.2d 134, 135 (2d Dep't 2006) (Docket No. 9, Pl. Memo. at 16-17).  These cases apportion liability for damages from the personal injury and adds little to consideration of a contract dispute.

Plaintiff also cited a non-personal injury indemnification case, Spring Sheet Metal & Roofing Co., supra, 273 A.D.2d 789, 710 N.Y.S.2d 743, 744 (id. at 17).  There, the owners of the Techniplex Mall sued Spring Sheet Metal & Roofing Co. ("Spring Sheet"), a roofing subcontractor, for installation of an allegedly defective roof.  Spring Sheet commenced a third-party action against the manufacturers of the roofing materials for indemnification.  Spring Sheet later amended the third-party complaint to change its indemnification claim.  Defendants then moved to dismiss the third-party complaint because Spring Sheet's liability was contractual and contribution was not available. Spring Sheet cross moved for leave to amend the third-party complaint to allege common law indemnification.  273 A.D.2d at 789, 710 N.Y.S.2d at 744.  Then-New York Supreme Court Justice Charles Siragusa granted the defense motion and denied Spring Sheet's cross motion, id. at 789, 710 N.Y.S.2d at 744.  Techniplex's action against Spring Sheet later settled and Spring Sheet commenced its action against defendants seeking common law indemnification for the amount it paid in the settlement, id. at 789, 710 N.Y.S.2d at 744.

Defendants in the Spring Sheet's action moved to dismiss and the Fourth Department rejected one defendant's argument that Spring Sheet failed to state a cause of action for common-law indemnification, id. at 789, 710 N.Y.S.2d at 744-45 (citing Leon v. Martinez, 84 N.Y.2d 83, 87-88, 614 N.Y.S.2d 972, 974 (1994)); see Leon, supra, 84 N.Y.2d at 86, 614 N.Y.S.2d at 973 (assignment of percentage of personal injury settlement).  The Fourth Department held that Spring Sheet Metal alleged a common-law indemnification claim, 273 A.D.2d at 790, 710 N.Y.S.2d at 744-45.

In the commercial context raised here, however, indemnification requires determining who is at fault for the commercial injury.  The injury here that Plaintiff seeks indemnified is the default on the DLL's lease when Plaintiff stopped payments for the defective device (Docket No. 1, Ex. A, Compl. ¶ 43).  Plaintiff alleges that any damages owed to DLL for lease payments were due to Defendants' failure to provide a defect-free and merchantable Mazor X and failure to "seasonably cure the defects" (id. ¶ 82).  The injury to DLL, however, was Plaintiff's nonpayment of the lease payments not the condition of the device.

Judge Siragusa later observed "a party cannot obtain common-law indemnification to recover damages resulting from its own breach of contract," Milnot Holding Corp. v. Thruway Produce, Inc., No. 08CV6140, 2014 WL 895220, at *6 (W.D.N.Y. Mar. 5, 2014) (Siragusa, J.) (quoting Knight v. H.E. Yerkes and Assocs., Inc., 675 F. Supp. 139, 143 (S.D.N.Y. 1987)) (Docket No. 5, Defs. Memo. at 21; Docket No. 10, Defs. Reply Memo. at 7; but cf. Docket No. 9, Pl. Memo. at 18).  There, plaintiff Milnot Holding (the owner of Beech-Nut Nutrition Corporation) sued Thruway Produce for its breach of contract when Thruway Produce supplied apples to plaintiff contaminated with rat poison, id. at *1.  Thruway Produce thus could not seek common-law indemnification against third-party defendant C.W. Cold Storage, Inc., the cold-storage operator for Thruway Produce's apples, id. at *7, 1.  Thruway Produce had an oral agreement with C.W. Cold Storage and no provision regarding indemnification, id. at *1.  After grant of summary judgment to another defendant, the remaining possible source of the rat poison was C.W. Cold Storage, id, at *2.

Milnot Holding then sued Thruway Produce for breach of contract and breach of warranties, id. at *3.  Thruway Produce then commenced third-party claims against C.W. Cold Storage for contribution, common-law and contractual indemnification, claiming that it was the middleman and the contamination occurred from the growers or the storage operators, id.

C.W. Cold Storage moved for summary judgment against Thruway Produce's contribution claims arguing that since Thruway's claims are essentially contractual and not tort-based, Thruway cannot prevail on common-law contribution or indemnification, id. at *4.  Judge Siragusa held that "since Thruway's liability to Milnot is contractual, the Court agrees with C.W. [Cold Storage] that Thruway cannot prevail on its claims for contribution and common-law indemnification" because under New York law "'there is no right of contribution between parties whose potential liability to a third party is for economic loss resulting only from breach of contract,'" id. at *6 (quoting In re Crazy Eddie Sec. Litig., 802 F. Supp. 804, 815 (E.D.N.Y. 1992)).  Judge Siragusa then found that the oral contract between Thruway and C.W. Cold Storage did not address indemnification and no implied contractual indemnification was established, granting summary judgment to C.W. Cold Storage dismissing that claim, id. at *7.  Judge Siragusa denied an implied contractual indemnification because "Thruway's liability arises from its own breach of contract," id.

The Mazor Defendants here only would be obligated to indemnify Plaintiff if, by operation of law, they were actively at fault for DLL's injury.  Defendants' liability sounds in contract (the Sales Agreement with Plaintiff) and Plaintiff's liability to DLL arose from the Master Lease, two separate agreements.

The injury to DLL is not the defects in the Mazor X; its injury was the nonpayment of the Mazor X lease.  DLL's lease did not obligate Defendants upon default.  Defendants were not a party to the Master Lease.  Nor were Defendants vicariously liable to DLL to justify indemnification, cf. id. at *6, 7 n.22; Richards Plumbing & Heating Co. v. Washington Group Int'l, Inc., 59 A.D.3d 311, 312, 874 N.Y.S.2d 410, 411 (1st Dep't 2009).  Plaintiff used the defects in the device as the excuse for nonpayment (leading to the settlement with lessor DLL).  Defendants are not responsible for Plaintiff's decision to not pay the lease on the defective device (or settlement of the resulting lease dispute) as Plaintiff was not responsible for defects in the Mazor X (cf. Docket No. 9, Pl. Memo. at 18).  There is no possible set of facts on which it can be true that Defendants are at least possibly responsible for harm to DLL to indemnify Plaintiff, see Knight, supra, 675 F. Supp. at  143 (see Docket No. 10, Defs. Reply Memo. at 7).  Plaintiff cannot recover indemnification for its breach of the lease agreement.

Plaintiff's settlement of DLL's claim also precludes common law indemnification from Mazor.  The Court of Claims in Allstate Insurance observed that Allstate invoked "a theory of recovery" of common law indemnification where there has been a settlement similar to Plaintiff's argument here but the court allowed common law indemnification "only where one party is compelled by the judgment of a competent court to respond in damages for the wrongful act or neglect of another," id. at 871, 872, 579 N.Y.S.2d at 310 (emphasis in original, citing 23 N.Y. Jur.2d, Contribution, Indemnity and Subrogation § 63).  The court concluded that "claimant here settled and bought its peace and release from liability," id. at 872, 579 N.Y.S.2d at 310.  In denying common law indemnification, the court held that Allstate's settlement was "Claimant's Achilles' heel.  Common law

35

indemnification may not be invoked where the party seeking recovery has settled," id. at 872, 579 N.Y.S.2d at 310, because common law indemnification requires "a judgment compelling payment," id. at 872, 579 N.Y.S.2d at 310.  With the settlement, the court questioned whether there was a loss for indemnification if the insured were held not to be responsible, id. at 872, 579 N.Y.S.2d at 310.  Allstate was unwilling to test its theory that the state's design of the roadway, and not its insured, was liable by settling and "purchas[ing] its peace," id. at 872, 579 N.Y.S.2d at 311, concluding that Allstate's settlement precluded adjudication of its claims either in State Supreme Court or the Court of Claims, id. at 873, 579 N.Y.S.2d at 311.

In the present case, by Spinal Technologies' settlement with DLL, Plaintiff bought peace on the lease claims and waived its ability to argue that liability ought to be at Mazor's door.  Under New York law, common law indemnification is not available to Plaintiff.

Thus, the Motion to Dismiss (Docket No. 5) the Sixth Cause of Action for indemnification or contribution is granted.

## IV.    Conclusion

Defendant Mazor Robotics Ltd. is dismissed on stipulation (Docket No. 9, Pl. Memo. at 8).

Remaining Defendant Mazor Robotics Inc.'s Motion to Dismiss (Docket No. 5) the Second Cause of Action for breach of implied warranties is granted because the Sales Agreement contains a conspicuous disclaimer provision.  The First and Third Causes of Action also are dismissed because the Complaint fails to state a claim against Mazor from the repeated repairs for the Mazor X.

36

Plaintiff's alternative claim (alleged in the Fourth Cause of Action) for quasi-contract relief also is dismissed because Plaintiff is not challenging the validity of the Sales Agreement to allow alternative pleading of breach of contract and unjust enrichment.

The declaratory relief sought in the Fifth Cause of Action is denied because Plaintiff retained the Mazor X for 30 months before revoking acceptance or rejecting the device, an unreasonable period of delay in rejecting the device.  Plaintiff's indemnification claims from its suit by DLL for the unpaid lease alleged in the Sixth Cause of Action is dismissed. The contribution theory of the Sixth Cause of Action also is dismissed upon Plaintiff's abandonment of that theory.  Therefore, Defendants' Motion to Dismiss (id.) is granted and this action is dismissed.

## V.    Orders

IT HEREBY IS ORDERED, that Defendant Mazor Robotics Ltd. is DISMISSED as a Defendant in this action.

FURTHER, that Defendant Mazor Robotics Inc.'s Motion to Dismiss (Docket No. 5) is GRANTED.

FURTHER, that the Clerk of Court is DIRECTED to close this case.

SO ORDERED.


Dated:          August 30, 2022
                Buffalo, New York


                                          s/William M. Skretny
                                          WILLIAM M. SKRETNY
                                          United States District Judge